UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEANN GRAHAM, <br><br> Plaintiff, <br><br> v. <br><br> UMH IN HOLIDAY VILLAGE, LLC, et al., <br><br> Defendants. | Case No. 3:20-CV-714 JD |

**OPINION AND ORDER**

Plaintiff DeAnn Graham, proceeding *pro se*, sued Defendants UMH IN Holiday Village, LLC, Sanders Pianowski, LLP, and Matthew A. Yeakey. Ms. Graham alleges UMH discriminated against her on the basis of race and disability under the Fair Housing Act and Rehabilitation Act. Ms. Graham also alleges general state law claims of defamation and trespass against UMH and destruction of evidence against all three Defendants. Defendants jointly moved to dismiss the lawsuit, arguing that Ms. Graham's federal claims are barred by the *Rooker-Feldman* doctrine. Defendants also argue that Ms. Graham's state law claims lack supplemental jurisdiction in the absence of federal claims. For the following reasons, the Court grants Defendants' motion.

**A. Statement of Facts**

Plaintiff DeAnn Graham is suing to recover damages for what she claims are violations of the Fair Housing Act and Rehabilitation Act, and for additional violations of state law, by Defendant UMH Holiday Village and its counsel, Defendants Sanders Pianowski, and Matthew Yeakey. The Court construes Plaintiff Ms. Graham's *pro se* complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

1

Ms. Graham is a former tenant of a housing complex managed by UMH. (DE 16-4 at 14.) She lived there from around December 2013 until her eviction in July 2018. (DE 16-4 at 10; DE 16-5.) On June 18, 2018, Ms. Graham's daughter was in front of her house with their family dog. (DE 16-7 at 2.) Ms. Karen Wills, regional manager for UMH, drove through the neighborhood and stopped at Ms. Graham's house to inquire about the presence of the dog. (*Id.*) Mr. Chris Waters, property manager for UMH, was also present. (*Id.* at 3.) After an altercation between Ms. Graham and Ms. Wills, UMH notified Ms. Graham that she was in breach of her lease for possessing an unregistered, prohibited dog breed that had bitten Ms. Wills, and gave her two days to cure the violation. (DE 16-4 at 4.) UMH and its counsel, Mr. Yeakey, then began eviction proceedings against Ms. Graham in small claims court on June 28, 2018. (*Id.* at 2.)

After a hearing at which both UMH and Ms. Graham presented evidence and gave testimony, the small claims court issued an Order for Immediate Possession against Ms. Graham on July 23, 2018. (DE 16-5.) The order gave her until August 10, 2018, to vacate the property and Ms. Graham moved out in late July 2018. (DE 16-7 at 4.) Ms. Graham then filed a counterclaim against UMH on August 2, 2018, seeking $6,000 in damages for emotional distress. (DE 16-6.) In her counterclaim, Ms. Graham alleged racial bias and retaliation by UMH's managers for her prior complaints about the management of the street. (*Id.* at 5.) At trial, both parties appeared and presented evidence. (DE 16-7 at 2.)

After trial, the Elkhart Superior Court issued an eviction judgment against Ms. Graham on February 12, 2019. (*Id.*) The superior court found that it was "more likely than not that [Ms. Graham's] dog was a prohibited breed, to wit, a pit bull, (likely an addition to [Ms. Graham's] dog Cane) and that the dog was not properly registered as an emotional support animal in accord

2

with the Lease." (*Id.* at 3.) The court concluded that Ms. Graham had breached her written lease by maintaining an unregistered pit bull and that the eviction was proper. (*Id.*)

Regarding Ms. Graham's counterclaim for racial profiling, the superior court found that UMH provided evidence that all tenants were treated equally. (*Id.* at 5.) The court also found that UMH established that notices were sent to all residents with unregistered or banned pets which were prohibited under the terms of the lease. (*Id.*) While the court acknowledged the distress faced by Ms. Graham and her daughters from the eviction, it held that the eviction was due to Ms. Graham's breach of the lease. (*Id.*) Separately, Ms. Graham lost her job around this time, leading to her inability to pay the prorated rent and vacating the property early. (*Id.*) The court entered judgment against Ms. Graham and awarded UMH $2,274.55 plus costs. (*Id.* at 5.)

Ms. Graham timely appealed the state court's judgment on March 26, 2019. (DE 16-8.) On December 18, 2019, the Indiana Court of Appeals issued an opinion affirming the small claims court's judgment. (DE 16-9.) The appellate court found that Ms. Graham's arguments that her dog Kane was a golden retriever, not a pit bull, and that he was registered with UMH were requests to "reweigh the evidence and judge the credibility of the witnesses, which we cannot do." (*Id.* at 8–9.) The court also affirmed the small claims court's denial of Ms. Graham's counterclaim, again noting that Ms. Graham's request was to ask the court to impermissibly reweigh the evidence. (*Id.* at 10.) The appellate court also noted that Ms. Graham raised claims under the Fair Housing Act and Rehabilitation Act that they could not hear, because they had not been raised in the small claims court from which she appealed. (*Id.* at 9.)

Next, Ms. Graham filed a Petition to Transfer to the Indiana Supreme Court for violations of the Fair Housing Act and Rehabilitation Act on January 31, 2020. (DE 16-10.) On June 23, 2020, the Indiana Supreme Court denied Ms. Graham's petition to transfer. (DE 16-11.) The denial of

3

the Petition to Transfer represents the final state court proceeding between UMH and Ms. Graham.

During this period, Ms. Graham also brought administrative action against UMH. She filed a complaint with HUD for disability discrimination on June 22, 2018, which was referred to the Elkhart Human Rights Commission (EHRC). (DE 16-6 at 8.) The EHRC reached a decision on September 28, 2018, and found no probable cause for Ms. Graham's complaint of disability discrimination. (DE 18-1 at 47.) Ms. Graham does not appear to have sought judicial review of the decision.

After proceeding in Indiana state courts, Ms. Graham filed a new complaint in this Court. (DE 1.) Ms. Graham seeks $75 million on behalf of herself and her daughters as well as declaratory relief, alleging that UMH discriminated against her on the basis of both race and disability under the Fair Housing Act (42 U.S.C. §§ 3604(f)(1)–(2), (f)(3)(B)) and the Rehabilitation Act (29 U.S.C. § 794). (DE 2 at 9–10.) Ms. Graham alleges that her dog Kane was an emotional support animal for her daughter and registered with UMH in accordance with the terms of her lease. (*Id.* at 3–4.) Even if the dog was unregistered or had no documentation, Ms. Graham alleges that the eviction was a denial of a reasonable accommodation for an assistance animal in violation of the Fair Housing Act. (*Id.* at 8.) Ms. Graham does not appear to allege facts supporting her racial discrimination claim, but instead focuses on disability discrimination. (*Id.* at 2–8.) To the extent it is discernible, Ms. Graham also seems to refer to a retaliation claim under the Fair Housing Act (42 U.S.C. § 3617) but the basis for this claim is unclear. (DE 2 at 11).

Ms. Graham brings a second group of claims under state law, such as defamation, trespass, and destruction of evidence. (*Id.* at 1.) The claim of trespass appears to be based on Ms. Wills's

entry onto Ms. Graham's yard (*id.* at 4) and defamation appears to be based on UMH and Ms. Wills telling other community residents that Ms. Graham owned an unregistered pit bull that had bitten Ms. Wills. (*Id.* at 7.) The claim for destruction of evidence appears to be based on UMH's alleged destruction of documentation for the emotional support animal. (*Id.*)

It is unclear to what extent these claims are brought against Sanders Pianowski or Mr. Yeakey. Neither of these Defendants were present at the June 18, 2018, altercation underlying the eviction, although they represented UMH throughout the eviction proceedings in state court. (DE 16-4 at 2.) Mr. Yeakey was also counsel for UMH in a prior attempted eviction of Ms. Graham; however, that filing was withdrawn in view of an error by UMH. (DE 2-1 at 20.) Ms. Graham's claim of destruction of evidence may be intended to apply to these Defendants based on their concealment or destruction of records of an emotional support animal on behalf of UMH during the state court eviction proceedings, as alluded to in her reply brief. (DE 20 at 2–3.)

Defendants jointly moved to dismiss for lack of subject matter jurisdiction in response to Ms. Graham's complaint. (DE 15.) In their accompanying brief, they argue that the Court lacks subject matter jurisdiction over Ms. Graham's claims under the *Rooker-Feldman* doctrine. (DE 16.)

**B. Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of claims over which the Court lacks subject matter jurisdiction. If a jurisdictional challenge under 12(b)(1) is a facial challenge that contests the sufficiency of the plaintiff's allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Silha v. ACT, Inc.* 807 F.3d 169, 173 (7th Cir. 2015). However, if the

challenge is a factual challenge that denies or contests the existence of subject matter jurisdiction, the Court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Dig, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009) (quoting *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)).

Here, Defendants deny the existence of subject matter jurisdiction and raise a factual challenge, arguing that the *Rooker-Feldman* doctrine bars this suit for lack of subject matter jurisdiction.

**C. Discussion**

**(1) Rooker-Feldman *Doctrine***

"The *Rooker-Feldman* doctrine states that federal courts, other than the Supreme Court, do not have jurisdiction to review decisions of state courts in civil cases." *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It prevents federal courts from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Only the Supreme Court has jurisdiction to review state court judgments, no matter how wrong the state court judgment may be. *Andrade v. City of Hammond*, No. 20-1541, 2021 WL 3745446, *2 (7th Cir. 2021). "To determine whether *Rooker-Feldman* bars a claim, we look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff." *Johnson*, 551 F.3d at 568 (citing *Remer v. Burlington Area Sch. Dist.,* 205 F.3d 990, 997 (7th Cir. 2000)). In

this inquiry, the nature of the injury does not turn on whether the plaintiff contends it is a federal civil rights violation. *Lyons v. Gene B. Glick Co.*, 844 Fed. App'x 866, 868 (7th Cir. 2021).

Courts apply a two-step analysis under *Rooker-Feldman*. The first step is to determine "whether the federal plaintiff seeks to set aside a state court judgment" or whether the plaintiff is "presenting an independent claim." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004). Courts consider whether a plaintiff's federal claims are "independent" or, instead, whether they "either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Andrade*, 2021 WL 3745446 at *2 (quoting *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019)). If the federal claims are independent, then they are not barred by *Rooker-Feldman*. A claim is independent when the alleged injury is distinct from the state court judgment: for instance, *Rooker-Feldman* is inapplicable when the federal claim alleges "a prior injury that a state court failed to remedy." *Centres Inc. v. Town of Brookfield*, 148 F.3d 699, 701 (7th Cir. 1998). If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

For a federal claim to be inextricably intertwined with a state court judgment, "there must be no way for the injury complained of by [the] plaintiff to be separated from [the] state court judgment." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016). "When a state court judgment is the cause of a plaintiffs' injury, *Rooker-Feldman* bars federal review." *Swartz*, 940 F.3d at 391. "This is the case even when plaintiffs allege that the state court judgment was obtained through defendants' bad faith actions." *Id.* The critical question is

7

"whether the district court is essentially being called upon to review the state court decision." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

If the federal claims "directly challenge" or are "inextricably intertwined" with a state court judgment, then courts proceed to the second step of the *Rooker-Feldman* analysis. *Andrade*, 2021 WL 3745446 at *2. In step two, we consider "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Jakupovic*, 850 F.3d at 902. The "reasonable opportunity" inquiry focuses on difficulties caused by factors outside of the parties' actions that precluded a plaintiff from bringing federal claims in state court, such as state court rules or procedures. *Id.* at 904. Possibility of transfer to another docket to hear the claim, even if the initial court could not hear it, may rise to the level of reasonable opportunity. *See Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 606–07. If the plaintiff had such an opportunity, then *Rooker-Feldman* bars federal court jurisdiction. The party asserting proper federal subject matter jurisdiction bears the burden of establishing it. *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010). In this case, Plaintiff Ms. Graham bears the burden.

The Court will first consider Ms. Graham's federal claims, followed by her state law claims, against UMH Holiday Village, Sanders Pianowski, and Mr. Yeakey.

### (2) *Federal Claims*

Under *Rooker-Feldman* the Court addresses whether Ms. Graham's federal claims are "independent" or "inextricably intertwined" with the state court judgment. Ms. Graham is not directly appealing her adverse state court judgment despite language in her complaint suggesting the trial court erred. In her complaint she alleges racial and disability discrimination under the

Fair Housing Act. Her injury is an alleged wrongful eviction resulting in emotional distress, loss of housing, and loss of economic stability.

First, the Court considers Ms. Graham's claims of racial discrimination and retaliation. Ms. Graham asks the Court to find that there was no lease violation or breach of contract and that UMH racially discriminated against her. Although the Court construes Ms. Graham's *pro se* complaint liberally, it is difficult to determine the basis of any retaliation claim she may be bringing. Regardless, to find that UMH acted wrongfully in terminating her lease would impermissibly call into question the state court's findings that there was a lease violation and breach of contract; that there was no evidence of racial discrimination; and, that her eviction was proper. Therefore, Ms. Graham has, in essence, asked the Court to review the decision of the Elkhart Superior Court and her federal racial discrimination claim is "inextricably intertwined" with the state court's judgment. *See Swartz*, 940 F.3d at 391 (finding plaintiffs' allegations in federal district court of defendants' wrongful seizure of their animals barred by *Rooker-Feldman* because they call into question the state court's prior finding of probable cause of animal neglect).

If the complaint alleges "an injury 'caused by the state court judgment'" and not an independent prior injury that the state court failed to remedy, then the plaintiff's claims are "inextricably intertwined" with the state court judgment. *Andrade*, 2021 WL 3745446 at *3 (quoting *Sykes*, 837 F.3d at 742). On the other hand, where "defendants' challenged conduct . . . occurred before any judicial involvement," the plaintiff's claims are not "inextricably intertwined" with the state court judgment. *Id.* Here, Ms. Graham's eviction judgment caused her alleged injuries of emotional distress, loss of housing, and loss of economic stability. These injuries are not independent of the eviction judgment and the challenged conduct arose from state

judicial involvement. Ms. Graham's complaint contains few direct references to racial discrimination, but even construing her complaint liberally, in essence, to hear this claim would constitute an impermissible review of the state court's finding that the eviction was proper over her racial discrimination counterclaim. Her injuries were complete only when the eviction was ordered. *See Lyons*, 844 Fed. App'x at 868 (holding that plaintiff's alleged injuries of loss of housing, credit, and economic stability were complete only when the court ordered the eviction).

Next, the Court addresses Ms. Graham's claim of disability discrimination. She alleges that Kane is a golden retriever mix, not a pit bull, and that he was properly registered with UMH. She further alleges that even if Kane was unregistered, UMH discriminated against her by denying a reasonable accommodation and commencing an eviction. To make these determinations would contradict the state court's finding that it was "more likely than not" that Ms. Graham owned an unregistered pit bull. (DE 16-7 at 3.) This was the basis for the state court's holding that the eviction was proper, which this Court may not review. Therefore, Ms. Graham's claim of disability discrimination is also "inextricably intertwined" with the state court judgment.

Although Ms. Graham now alleges a federal civil rights violation, the inquiry into the nature of the injury does not depend on whether the plaintiff casts it as a civil rights action. *Lyons*, 844 Fed. App'x at 868. In *Lyons*, the court considered claims under the Fair Housing Act resulting from a small claims court eviction. *Id.* The court distinguished between two groups of Fair Housing Act claims. Claims that arose from facts unrelated to state court proceedings were not barred, *id.* at 868–869, while the claims for injuries which were completed when the eviction was ordered were barred under *Rooker-Feldman, id.* at 869. Similarly, here Ms. Graham's injuries were complete when her eviction was ordered, and she would not have suffered the alleged

injuries absent the order. *Id.* Her claim of disability discrimination under the Fair Housing Act is "inextricably intertwined" with the state court judgment and does not arise independently.

Because her federal claims are "inextricably intertwined" with the state court judgment, the Court moves to the second *Rooker-Feldman* question of whether Ms. Graham had a reasonable opportunity to raise her claims in state court. First, the Court considers Ms. Graham's claims of racial discrimination and retaliation. Ms. Graham appeared at her eviction hearing, raised a counterclaim, and presented evidence in her favor. Ms. Graham's counterclaim for emotional distress was based on UMH's alleged racial discrimination and retaliation against her. Ms. Graham seeks to recast her racial discrimination claim here under federal civil rights law, even though she had an opportunity in state court to raise it and did raise the issue there.

Turning to Ms. Graham's claim of disability discrimination, Ms. Graham does not allege procedural barriers to raising her claim of disability discrimination in state court. In its decision, the Indiana Court of Appeals noted that Ms. Graham made arguments under the Fair Housing Act and Rehabilitation Act, but that those claims were raised in administrative proceedings rather than the small claims court and therefore could not be addressed by the appellate court. Ms. Graham was not precluded from an opportunity in small claims court to bring other federal counterclaims. Even if the additional claims would have exceeded the small claims court jurisdictional amount, she could have transferred the case to the plenary docket to have the proper forum for the claims. *See Kelley*, 548 F.3d at 606–07. This possible consequence, being kicked out of small claims court, is not enough to circumvent *Rooker-Feldman*. *See Fincher v. South Bend Housing Authority*, 612 F. Supp. 2d 1009, 1019 (N.D. Ind. 2009).

Therefore, the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction regarding Ms. Graham's federal claims against UMH.

**(3)** *State Law Claims*

Without a viable federal claim, the court relinquishes Ms. Graham's state law claims of defamation and trespass against UMH and destruction of evidence against UMH, Sanders Pianowski, and Mr. Yeakey and declines to exercise supplemental jurisdiction. *See Lyons*, 844 Fed. App'x at 869.

**D. Conclusion**

For the foregoing reasons, the Court GRANTS UMH Holiday Village, LLC, Sanders Pianowski, LLP, and Matthew A. Yeakey's motion to dismiss (DE 15) and DISMISSES all federal claims against them for lack of subject matter jurisdiction. The Court further DISMISSES Ms. Graham's state law claims without prejudice.

SO ORDERED.

ENTERED: September 21, 2021

                                                  /s/ JON E. DEGUILIO
                                                  Chief Judge
                                                  United States District Court